United States District Court
District of Connecticut
FILED AT HARTFORD

8/30/18                                    20

Roberta D. Tabora, Clerk

By
Deputy Clerk

1

<pre>
 1                    UNITED STATES DISTRICT COURT
                    FOR THE DISTRICT OF CONNECTICUT
 2

 3

 4   UNITED STATES OF AMERICA,        )
                Plaintiff,            ) Civil Action No.
 5                                    ) 3:13-cr-00011
     VS                              )
 6                                    ) APRIL 19, 2018
     KEVIN WALLIN,                    )
 7                Defendant.          )

 8

 9

10

11                   SENTENCING, HELD BEFORE
         THE HONORABLE ALFRED V. COVELLO, U.S.D.J.
12

13

14

15

16

17

18

19

20

21

22
           Reporter:   Wendy Allen, RMR, CRR, LSR #00221
23                        wjallen55@gmail.com
                            (413) 265-4999
24

25
</pre>

2

```
1                        APPEARANCES:

2
     Representing the Government:
3
          Patrick Caruso, Esq.
4         U.S. Attorney's Office
          157 Church Street
5         New Haven, Connecticut 06510

6
     Representing the Defendant:
7
          Kelly M. Barrett, Esq.
8         Federal Public Defender's Office
          265 Church Street
9         New Haven, Connecticut 06510

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1              THE COURT:  Folks, I apologize for the

2       late opening of court this afternoon.  It was solely

3       my fault and my responsibility, and I apologize to

4       you.

5              Take up now the matters of United States

6       versus Kevin Wallin.  Would counsel identify

7       themselves for the record, please.

8              MR. CARUSO:  Yes.  Good afternoon, Your

9       Honor.  On behalf of the Government, Assistant U.S.

10      Attorney Patrick Caruso.  Seated with me at counsel

11      table is Assistant U.S. Attorney Debraa Slater.

12              MS. BARRETT:  Good afternoon.  Kelly

13      Barrett from the Federal Defenders Office on behalf of

14      Kevin Wallin who's with me at counsel table.  Good

15      afternoon.

16              THE COURT:  All right.  As I understand,

17      the purpose of this afternoon's proceedings involves a

18      question of this gentleman's alleged violations of

19      conditions of his supervised release.  Specifically he

20      was ordered not to unlawfully possess a controlled

21      substance, and he was to refrain from any unlawful use

22      of a controlled substance, and he is to answer

23      truthfully all inquiries by the probation officer and

24      follow the instructions.

25              Do we have a dispute here with respect to

1   this or any of this?  Does anybody perceive the

2   necessity of an evidentiary hearing?

3                MR. CARUSO:  May I have a moment, Your

4   Honor?

5                THE COURT:  Sure.

6                MR. CARUSO:  Thank you, Your Honor.  Just

7   wanted to confirm.  It's my understanding that the

8   Defendant admits the violations set forth in the

9   violation report, so no, from the Government's point

10  of view, and I think from the Defendant's point of

11  view, there is not a need for a hearing today.

12               THE COURT:  Madam, is that your

13  understanding also?

14               MS. BARRETT:  Yes, Your Honor.

15  Mr. Wallin would be -- is in a position to admit the

16  violations, and what we are proposing is that the

17  Court would -- because the violation is based upon

18  Mr. Wallin's drug use and drug addiction, we have

19  created a specific treatment plan tailored to

20  Mr. Wallin, and what we're asking the Court to do is

21  to postpone resolution of the violation for 30 days

22  while the treatment plan is implemented.

23               Mr. Wallin is a participant in the

24  Support Court program in Bridgeport, which as the

25  Court knows is for people who are struggling with

1   addiction, as Mr. Wallin is, and he attended Support

2   Court yesterday, admitted to his drug use.  The

3   Support Court gave him a sanction that he complete 30

4   meetings, 30 12-step meetings within 30 days.

5   Mr. Wallin did attend a meeting this morning prior to

6   coming to court.

7           He has recently secured a sponsor in

8   connection with the 12-step meetings, which he has

9   never done before, and it is our position that the

10   sponsor would serve as, in effect, a third-party

11   custodian who could sign off on whether Mr. Wallin is,

12   in fact, attending the 30 meetings in 30 days and

13   could report to probation if that's happening or not

14   happening.

15           In addition to that, Your Honor, there is

16   a treatment plan that has been created, which is that

17   Mr. Wallin would continue to participate in Support

18   Court, he would continue to participate in relapse

19   prevention treatment which he attends two times a

20   week, he would be subject to random urinalysis which

21   would require him to call daily potentially to be drug

22   tested, he would continue in the court's MRT program,

23   he would participate in weekly psychotherapy for

24   mental health treatment, and he would not only

25   participate in Support Court but complete the Support

1    Court sanction which involves both completing 30

2    meetings in 30 days as well as making 100 phone calls

3    to people in need suffering from drug addiction.

4              And what we would ask the Court to do

5    would be to modify his conditions of release to

6    implement that treatment plan, and in addition to put

7    Mr. Wallin on a period of home confinement for six

8    months with GPS monitoring such that he would only be

9    able to leave the home for treatment purposes, and

10   this would enable him to focus on the treatment plan.

11             It's our position, Your Honor, that

12   Mr. Wallin suffers from an addiction, which is a brain

13   disease that can be treated.  Prison is not going to

14   treat Mr. Wallin.  As Your Honor knows, he has already

15   served his time for the offense.  The only issue

16   before the Court is Mr. Wallin's addiction, which he

17   continues to struggle with.

18             Not only will prison not treat his

19   addiction, but the literature suggests this will

20   actually make it worse.  And in a violation context

21   the statute says that the Court is not to consider

22   punishment.  At this juncture prison would only be

23   punishment and it would not accomplish what needs to

24   be accomplished here, and I think we can all agree

25   what needs to be accomplished.  Mr. Wallin needs

1    treatment.

2              We have created a treatment plan that

3    will address that, and specifically the 30 meetings in

4    30 days and having a sponsor to really provide

5    accountability for Mr. Wallin on a day-to-day basis,

6    which has never been done before, and to report to

7    probation if that's being accomplished I think will

8    provide the accountability that Mr. Wallin needs.

9              He wants to get the treatment.  There is

10   a plan available, and so for that reason I'm asking

11   the Court to keep Mr. Wallin on supervision, implement

12   the treatment plan that I've proposed, which includes

13   home confinement, and to postpone this violation for

14   30 days, at which time we can come back to court and

15   see if he's been able to accomplish the treatment

16   plan, and if something in the meantime occurs and he's

17   not, we could come back to court sooner, but he's

18   committed to this treatment plan, and I think that

19   the -- it is the best hope of Mr. Wallin treating his

20   addiction.

21             THE COURT:  All right.  Madam, he is

22   prepared to concede that he has violated the terms of

23   a previously entered order of supervised release?

24             MS. BARRETT:  Yes, he is, Your Honor.

25             THE COURT:  Okay.  Well, Mr. Wallin, I

1    did just want to tell you that however you perceive

2    the fairness of the eventual outcome of what occurs

3    here today, you have the right to appeal that decision

4    to a higher court, and should you decide to do that,

5    such an appeal has to be lodged within 14 days from

6    today.  Now, you should discuss all of that with

7    Attorney Barrett who is very familiar with these

8    matters.

9            We've got a question here of daily

10   reporting going forward here for some period.  What's

11   your view on this, Attorney Caruso?

12           MR. CARUSO:  Yes.  Thank you, Your Honor.

13           Well, my view for starters is that we

14   find ourselves in a very unfortunate proceeding,

15   because everybody wants Mr. Wallin to succeed, all the

16   parties.  I think that's a fair statement.  The

17   Government certainly wants him to succeed.

18   Ms. Barrett most certainly wants him to succeed.  The

19   probation officer has gone above and beyond to help

20   Mr. Wallin succeed.  And I would speculate,

21   respectfully, that the Court wants Mr. Wallin to

22   succeed.  But the truth is that he is not succeeding.

23   He is failing.

24           And it is not just the fact of his

25   failure that's problematic for the Court, in my view,

1    it's the manner in which he is failing that's

2    problematic for the Court.  And I think Mr. Wallin has

3    put the Court in a very difficult situation by the

4    manner in which he has failed repeatedly while on

5    supervised release, because he now finds himself in a

6    situation where revocation is mandatory, because of

7    the number of positive drug tests in a short period of

8    time.  And the Court has discretion to get around that

9    mandatory requirement.

10          But one thing that informs the

11   Government's position today is something that I think

12   is compelling, and I suspect the Court will find it

13   compelling, and that is the position of the United

14   States probation office.  It is in my experience, and

15   I know in Your Honor's experience in enumerable drug

16   cases, very rare for the probation officer to take the

17   position that the Defendant needs to be remanded

18   because of failures and because of the manner of

19   failures in a drug case.

20          And that's the position we find ourselves

21   in today.  We have a probation officer who has gone

22   above and beyond, who has extended every opportunity,

23   every benefit of the doubt to help Mr. Wallin succeed,

24   who has advocated for Mr. Wallin with the Government,

25   and yet today that probation officer, as I understand

1   Your Honor is aware from the recommendation,

2   recommends that Mr. Wallin needs what the probation

3   office refers to as a reset.  He needs to be remanded

4   for a period of time before he starts another term of

5   supervised release, and another course of treatment,

6   because he has exhausted everything.

7            He's exhausted intensive outpatient

8   treatment.  He's exhausted counseling.  He's exhausted

9   two rounds of inpatient treatment, first the 30 day

10  round, then a 90 day round.  And in addition to the

11  fact of the failures is the use.

12           When I say the manner of failing is

13  troubling and gives the Government pause and gives the

14  probation office pause, so much so that the probation

15  office now recommends a remand for 60 days, that

16  manner of failing is the dishonesty, the refusal to be

17  honest with the probation office, the refusal to be

18  honest with Support Court about continued use, the

19  affirmative misrepresentations about not using so that

20  Mr. Wallin could advance to another phase of Support

21  Court.  These things, in the Government's view, are

22  telling, and I think that that word used by the

23  probation officer of Mr. Wallin needing a reset is

24  really appropriate in this circumstance.

25           So I think that a period of incarceration

1    is appropriate, and it's hard really to come to a

2    different conclusion when you just look over the

3    record that's been established by the violation report

4    that Your Honor has in this matter.

5            Mr. Wallin was admitted to supervised

6    release on November 9th of 2016.  In December of 2016

7    it was suggested he begin relapse prevention.  He did

8    that.  He finished that on March 28th of 2017.  Seven

9    days later after finishing relapse prevention

10    treatment he relapsed, had a positive drug test.

11            In April, on April 20th of 2017 he

12    started the intensive outpatient treatment that I made

13    reference to at the Connecticut Renaissance.  Less

14    than a month later he had another positive drug test,

15    and this time denied to the probation officer that he

16    had used.  He continued in intensive outpatient

17    treatment at Connecticut Renaissance, this time adding

18    individualized counseling, which Ms. Barrett suggests

19    will be different this time if we add that condition.

20    He served one day in lockup as a result of that use,

21    on June 16th.

22            Less than a month later on July 14th he

23    had his third positive, again.  Even though he had

24    three at that time, three positives, and even though

25    revocation was mandatory, the probation officer did

1    not even seek to come back to court, with the

2    Government's consent, just informed the Court that

3    this was happening, that he viewed this as a serious

4    problem but that he wanted to give Mr. Wallin the

5    benefit of the doubt, to stay out, to not be back in

6    court about this, to try to get himself on track.

7              In retrospect maybe that was a mistake,

8    because he started inpatient treatment again on July

9    20th, started inpatient for the first time on July

10   20th.  He did 30 days there.  Four days after getting

11   out of intensive inpatient treatment he had his fourth

12   positive drug test, after inpatient treatment with all

13   of these services that we're talking about putting in

14   place now.

15             On September 5th he went back into

16   inpatient this time for 90 days.  That's at the Apppp

17   Foundation.  On January 9th he had his fifth positive,

18   just days after getting out of 90 days of inpatient

19   treatment.  90 days, Your Honor.

20             Worse yet, in the Government's view,

21   worse yet, he's denying these uses to the probation

22   office.  The best resource we have, the best asset the

23   court has to help him, if somebody is really

24   recognizing that they need help, if they want help,

25   this is a great asset.  There's no other asset like

1   this.  He's denying the use to the probation officer

2   as recently as January of this year.

3            In February the probation officer filed a

4   violation report.  We were scheduled to come to court

5   on March 28th.  On March 26th Mr. Vargas called me and

6   we spoke at length, and I remember the conversation,·

7   and he advocated for Mr. Wallin.  He advocated for a

8   continuance of the hearing to give Mr. Wallin an

9   opportunity after completing 90 days of inpatient this

10  time to further himself in Support Court and develop a

11  track record, because this time Mr. Wallin said it

12  would be different, so that when we came back to court

13  for the violation hearing Mr. Wallin and Ms. Barrett

14  on his behalf would be able to stand here and tell

15  Your Honor that things in fact were trending in the

16  right direction, that he had at least gotten through

17  60 days clean, had been candid with the probation

18  officer, had some track record of success.

19            Based upon that advocacy, on or about the

20  26th I consented to that motion, and to be candid,

21  Your Honor, it was against my better judgment, it

22  really was, because at that point I felt that Your

23  Honor should see Mr. Wallin.  I felt that he should be

24  here in your courtroom and that you should have an

25  opportunity to address this then.  But I did consent

```
 1    to that motion for a 60 day continuance.

 2              Two days later we got back a drug test

 3    that Mr. Wallin had taken on the 19th of March that

 4    was positive.  So while advocating for the

 5    continuance, while advocating for an opportunity to

 6    develop a track record and to continue this hearing,

 7    Mr. Wallin knew the whole time that he had used.  He

 8    hadn't shared that with the probation officer, and to

 9    me that's really troubling.  I think that is

10    misleading the Court, knowing that through counsel he

11    was asking for a continuance of the hearing, and

12    that's not the kind of conduct that I think ought to

13    be rewarded with yet another chance.

14              I think he does need the reset that

15    probation is talking about.  And if Your Honor needed

16    more evidence of that, in the interim between

17    scheduling this hearing and standing before you here

18    today Mr. Wallin has continued to use.  It is not

19    documented in the violation report.  In addition to

20    the six dirty urines that he has rendered since being

21    on supervised release, he admitted that he used this

22    month, that at least on April 10th, and perhaps

23    subsequently, he has relapsed again.

24              So to me this is a case that cries out

25    for the reset that probation is recommending of 60
```

1    days, whether Your Honor -- I mean the recommended

2    guideline range is three months to nine months, as I

3    recall.  Probation doesn't feel that that's necessary.

4    They feel a period of 60 days would be sufficient to

5    accomplish what needs to be accomplished so that

6    Mr. Wallin really can begin to be serious and refocus

7    on what he needs to do to be clean, if in fact that is

8    what he wants.

9           And I don't know how a credible argument

10   could be made to the contrary given the chronology

11   that's been laid out, given the circumstances and the

12   facts that have been very comprehensively laid out in

13   Mr. Vargas's report for Your Honor to consider.  I

14   don't know how a credible argument could be made to

15   the contrary.

16          And I'll just close with this, Your

17   Honor.  Ms. Barrett writes in her memorandum that she

18   writes in support today that Mr. Wallin is motivated

19   to make the changes and to receive treatment.  I

20   respectfully disagree with that.  I don't do so in a

21   disparaging way or a negative way, but just in a

22   factual way.  He is not motivated to make a change,

23   and seek treatment.  He may somewhere in his heart

24   want that, but he is not motivated to do it.  He is

25   not motivated to be candid with the probation officer

and to take advantage of all the resources at his
disposal.  He is not.  I'm sorry, but he's not.  He's
motivated to use, and to continue to use, and to
deceive the probation officer, and to refuse to comply
with relatively straightforward conditions of his
release.

So because he has exhausted all of his
options, because revocation is mandatory at this time,
and because we are in the, in my view, rather
extraordinary posture of having a very committed
probation officer recommend to the Court remand, I am,
just as I was in March, I am loathe to disagree with
the probation officer, because he is on the front
lines, as much as I felt it was not appropriate to
grant the continuance in March, I deferred to the
probation officer because he is on the front line,
because he is in close contact with Mr. Wallin, and
believed in him, and now today I'm on the flip side of
that.  I have to concur with the probation officer who
is in the best position to assess this, and it is
unfortunate, but I cannot disagree with probation that
remand is necessary.

So that is the unfortunate conclusion
I've arrived at, those are the reasons for which I
come out that way, and that concludes my remarks,

1    unless Your Honor has questions.

2                THE COURT:  Would you talk with the

3    gentleman and see if he would accede to raising the

4    period of proposed incarceration from two to nine

5    months, the maximum, and we would append and enter the

6    order that was requested, and we will suspend it and

7    append to the order what Attorney Barrett is

8    suggesting about daily reporting, and the order would

9    be there.  It would be in place if there was a

10   violation.  It doesn't mean you have to come back.

11   Just bring his toothbrush and report, nine months.

12               MR. CARUSO:  May I ask respectfully, Your

13   Honor, could you repeat that so I'm clear on what the

14   Court is suggesting?

15               THE COURT:  Granting exactly what is

16   being requested by the Probation Department, but

17   instead of two months increasing the period of

18   incarceration to nine months, and vacate and

19   suspending the order and appending to it what Attorney

20   Barrett is suggesting, vis-a-vis daily reporting, and

21   in the event of a violation, he just goes, but it's

22   not two, it's nine.

23               MR. CARUSO:  I'll be happy to consult

24   with the probation officer.  I think Your Honor could

25   inquire directly of him here in court if Your Honor

```
 1    was so inclined to do so.  I would suggest the Court
 2    respectfully -- I don't know, to be perfectly candid,
 3    I don't know that that can be done the way Your Honor
 4    is envisioning it.  It may be possible.  I just want
 5    to be frank with the Court that I'm not sure it can
 6    be, because if Mr. Wallin were to violate, I think he
 7    would have the right to have an opportunity perhaps to
 8    come back here anyway, even if Your Honor contemplates
 9    that another dirty urine would result in immediate
10    remand.  That may be possible.  I just want to be
11    honest with Your Honor, candid with Your Honor, that I
12    don't know that you can accomplish what you're hoping
13    to accomplish, and I do think, respectfully, that the
14    pro --
15              THE COURT:  Your colleague's very
16    experienced.
17              MR. CARUSO:  Be happy to consult with the
18    probation officer about that.  For the record, I would
19    ask that Your Honor impose a remand of 60 days at this
20    time, not a suspended sentence, but rather a period of
21    incarceration, just 60 days now rather than continue
22    down the course that has proven so very unsuccessful
23    with yet another opportunity and yet more counseling.
24              THE COURT:  That's the basis.  There's
25    nothing for this man.  So sir, I don't want to argue
```

1   with you.  I'd be grateful if you'd discuss it with

2   the probation officer and with your colleague.

3           MR. CARUSO:  Thank you, Your Honor.

4                   (Off record.)

5           MR. CARUSO:  I along with Attorney

6   Barrett have consulted with the probation officer at

7   Your Honor's request.  The probation officer and the

8   Government are not inclined to recommend a sentence of

9   nine months suspended which would be automatically

10  executed if in fact Mr. Wallin has another dirty

11  urine.

12          THE COURT:  Subject to the home

13  confinement and everything that is included in your

14  proposed order.

15          MR. CARUSO:  In Defendant's proposed

16  order?

17          THE COURT:  Well, whoever's order it is.

18          MR. CARUSO:  Here's what the probation

19  officer reports.  And again, the probation officer is

20  present if Your Honor wanted to inquire.  But what I

21  understand is the probation office would prefer that

22  Your Honor just continue this hearing 60 days, if

23  you're inclined to give Mr. Wallin yet another chance,

24  the probation office and I think Ms. Barrett would

25  consent to this, would continue this hearing for 60

1    days to see if Mr. Wallin given yet another

2    opportunity could stay clean, at which time Your Honor

3    could revisit this again.  I do not agree with that.

4    I think Your Honor should --

5              THE COURT:  I don't agree either.  I'd

6    enter the order as proposed suspended, and so we're

7    not talking about any continuances, the order is

8    suspended and the ball is in his court.

9              MR. CARUSO:  If you in fact were to go

10   that route you're saying?

11             THE COURT:  Yes.

12             MR. CARUSO:  Well, I don't -- again, I

13   don't know -- I'm trying to be candid with the Court.

14   I don't know how that would play out procedurally,

15   whether Mr. Wallin, were he to have more failures,

16   would have an opportunity to come back to court

17   notwithstanding what Your Honor's contemplating.

18             MS. BARRETT:  Mr. Wallin would be willing

19   to agree to Your Honor's proposal and we will not

20   object to that.

21             MR. CARUSO:  So really, Your Honor, I

22   think the ball is entirely in your court.  The

23   Government's position is consistent with probation's

24   original position, which is still probation's

25   position, that you should remand Mr. Wallin for 60

1    days today.  If Your Honor feels that's an

2    insufficient sentence and he should be remanded for

3    nine months, that's a determination that's within Your

4    Honor's discretion.

5              The Government would suggest,

6    respectfully, a sentence of 60 days today, to begin

7    immediately, to be followed by four years of

8    supervised release with the conditions that have been

9    proposed, including four months of home confinement,

10   as recommended by probation.  I'm sorry, Your Honor,

11   that's just what the Government views as appropriate

12   in this case.

13             THE COURT:  Madam, did you want to

14   comment or did Mr. Wallin want to comment?

15             MS. BARRETT:  Your Honor, I would -- I

16   just wanted to comment to say that Mr. Wallin agrees

17   with Your Honor's proposal of entering the order but

18   suspending it, giving him the opportunity to execute

19   the treatment plan, and if he were to violate

20   whatsoever, he would just be brought immediately to

21   court to be incarcerated.  So I do think that Your

22   Honor's plan makes sense.  Mr. Wallin is willing to do

23   that, so I think if he's willing to do that, then it

24   is something that Your Honor could do.

25             THE COURT:  And he's agreeable to the

1    nine months sentence in the event of his failure?  In

2    other words, we'll enter everything as required

3    mandated but instead of two months it's nine months.

4                MS. BARRETT:  Yes, he is, Your Honor.  On

5    the notion that he would be given the opportunity

6    today, that it would be suspended today to give him a

7    chance to implement the treatment plan, but that if he

8    were to violate, it would be nine months.

9                THE COURT:  And madam, explain again this

10   daily reporting program.

11               MS. BARRETT:  Well, there's two aspects

12   to it.  The first is that he must attend a 12-step

13   meeting every day for 30 days, and that that must be

14   confirmed by his sponsor, and that if he fails to do

15   so, that his sponsor will notify the probation office

16   immediately.

17               And then the second aspect of the daily

18   reporting is that he would be required to call --

19   there's a telephone number that he would be required

20   to call to get possible daily testing, drug testing

21   through urines, so he would have to call that number

22   every day and he'd be subject to random testing.

23               THE COURT:  And who is he calling daily

24   for testing?

25               MS. BARRETT:  The treatment program

1    number that's provided through the probation office.

2    And he would agree that the probation officer could

3    have direct contact with his sponsor to verify his

4    attendance at the daily meetings.

5             THE COURT:  All right, pursuant to the

6    accused's agreement, the Court finds by a

7    preponderance of the evidence that Mr. Wallin has

8    violated the conditions of his supervised release in

9    that he possessed a controlled substance, tested

10   positive for use of a controlled substance, and failed

11   to answer truthful inquiries by the probation office,

12   and a finding that that has occurred may enter.

13             The Court has considered the violation

14   report, everything presented here, all of the

15   arguments, statements by counsel, as well as all of

16   the factors set forth in Title 18 of the United States

17   Code Section 3553.  In particular the Court notes the

18   Defendant's history of non-compliance, including

19   numerous positive drug tests and untruthful statements

20   to the probation officer regarding the use of

21   controlled substances.  The Defendant's conduct

22   demonstrates the need for a specific deterrence as

23   well as the need to promote respect for the law, and

24   in light of these considerations the Court concludes

25   that it is fair, just and reasonable to impose a

1  guideline sentence of 9 months followed by a period of

2  supervised release of 48 months, including four months

3  of home confinement.

4          The Defendant will be subject to home

5  detention with location monitoring for the first four

6  months of his term of supervised release.  The

7  Defendant must comply with all of the program

8  requirements and instructions provided while on home

9  detention.

10          The Defendant shall be restricted to his

11  residence at all times except for the following:

12  Appointments with counsel, court appearances,

13  appointments with the U.S. probation office, medical,

14  mental health or substance abuse treatment, religious

15  services, court ordered obligations and other

16  activities as approved by the probation office, which

17  include participating in Support Court.  The Defendant

18  would pay all or a portion of the program based on his

19  ability to pay as determined by the probation office

20  and approved by the Court.

21          Two, the gentleman is to participate in a

22  cognitive behavioral treatment program as directed by

23  the probation office.  Such program may include

24  participation in a program such as the moral

25  recommendation therapy administered by the probation

1    office.  The Defendant must participate in a program

2    recommended by the probation office and approved by

3    the Court for inpatient or outpatient substance abuse

4    treatment and testing.  The Defendant will follow the

5    rules and regs of that program.  The probation officer

6    will supervise the Defendant's participating in the

7    program, and he's to pay all or a portion of the cost

8    associated with the treatment based on his ability to

9    pay as recommended by the probation officer and

10   approved by the Court.

11            I've explained to you, Mr. Wallin, your

12   right to appeal this decision, and if you want to

13   appeal, it will be 14 days.

14            Now, the probation office will be the

15   determiner of whether or not there has been a

16   violation of any of those conditions, and the sentence

17   is vacated and suspended, however, pending any

18   communication by the probation officer that there has

19   been any violation as to what is proposed, notify the

20   Court and the suspension is vacated and the gentleman

21   is to report to prison as directed.

22            MR. CARUSO:  Thank you, Your Honor.

23   Might I just ask a couple point of clarification?

24            THE COURT:  Sure.

25            MR. CARUSO:  So Mr. Wallin is certain

1    about what lies before him in the case, based upon

2    Your Honor's statements on the record and Your Honor's

3    order today, and based upon Ms. Barrett's statements

4    on behalf of Mr. Wallin, it would appear that by

5    agreeing to this suspended sentence, effectively

6    Mr. Wallin is waiving any right to a preliminary

7    hearing or revocation hearing should the probation

8    officer determine that there has been a violation.  Am

9    I correct in that?

10             THE COURT:  That's true.

11             MR. CARUSO:  And then through the Court,

12   is that the Defendant --

13             THE COURT:  The sentence is in place,

14   it's intact, it's complete, and it's been suspended

15   and vacated.

16             MR. CARUSO:  Yes.  I understand, Your

17   Honor.  I just want to be clear about what the

18   triggering of that execution of that sentence would

19   be.  If it's obviously drug use, any violation of the

20   conditions of your order, or the condition of

21   supervised release, would trigger that, as determined

22   by the probation officer.

23             THE COURT:  That's true.

24             MR. CARUSO:  So there's no need to come

25   back to court if a violation occurs.

1                    THE COURT:  Not necessary.

2                    MR. CARUSO:  Thank you, Your Honor.

3                    THE COURT:  Attorney Barrett, that is our

4      understanding, and would you just confirm that with

5      Mr. Wallin?

6                    MS. BARRETT:  Yes, Your Honor.

7                    THE COURT:  You agree?

8                    MS. BARRETT:  Yes, Your Honor.

9                    THE COURT:  Thank you.  Okay, so we can

10     take a recess.

11                        (Court adjourned)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        CERTIFICATE OF REPORTER

2

3          I Hereby certify that the foregoing 27 pages

4     are a complete and accurate computer-aided

5     transcription of my original stenotype notes taken in

6     the Matter of United States of America VS Kevin

7     Wallin, which was held before the Honorable Alfred

8     Covello, U.S.D.J., at United States District Court,

9     450 Main Street, Hartford, Connecticut, on

10    April 19, 2018.

11

12

13          Wendy Allen, RMR, CRR

14          Commissioner

15

16

17    My commission expires:  April 30, 2020

18

19

20

21

22

23

24

25